## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

UNITED STATES OF AMERICA,      )

                         )

          **Plaintiff,**      )       **CRIMINAL ACTION**

**v.**                      )

                         )       **No. 11-cr-00036-KHV-1**

**CROSBY POWELL,**         )

                         )

          **Defendant.**     )

_____)

### MEMORANDUM AND ORDER

This matter comes before the Court on defendant's Motion For Appointment Of Counsel And/Or Advisory Counsel (Doc. #465) and Defendant's Motion For An Order [Of] Reassignment Of This Case To A Judge In The District Of Colorado (Doc. #467), both filed August 10, 2015, and defendant's Amended Rule 33(b)(1) Motion [For New Trial Based On Newly Discovered Evidence] Pursuant To Federal Rules Of Criminal Procedure (Doc. #483) filed October 14, 2015.  Also before the Court are numerous motions related to defendant's motion for a new trial.

### Facts

On January 25, 2011, the grand jury charged defendant with 13 counts of possession of stolen mail in violation of 18 U.S.C. § 1708 and seven counts of fraud related to securities of private entities under 18 U.S.C. § 513(a).  See Indictment (Doc. #1).  On June 21, 2011, the grand jury returned a superceding indictment which charged defendant with 17 counts of possession of stolen mail in violation of Section 1708 and 11 counts of securities fraud under Section 513(a).

Beginning July 16, 2012, the Court conducted a nine-day jury trial.  Highly summarized, the evidence at trial included the following.

In October of 2006, a TCF Bank investigator contacted Postal Inspectors Brian Mullervy and Richard Sheehan about possible bank fraud involving stolen checks.  The investigator told the Postal

Inspectors that approximately $70,000 in stolen checks had been deposited into defendant's "Dis Wire" account at TCF Bank in Denver, Colorado. The Postal Inspectors went to the TCF Bank and contacted a teller who identified defendant as the person who had deposited the checks. The Postal Inspectors also retrieved the stolen checks and the related deposit slip. The Inspectors then contacted defendant and he agreed to meet with them. Defendant acted surprised when they told him that the checks were stolen. Defendant stated that he had two businesses involving business cards, used cell phones and used computers. He said that the checks which he had deposited came from customers who had purchased merchandise from him.

Numerous witnesses testified regarding stolen checks that had been deposited into defendant's TCF bank account and other bank accounts at UMB Bank and Wells Fargo. These witnesses testified that they had placed specific checks in an authorized mail receptacle, and that the checks were intended to be received and deposited by the intended recipient. The witnesses further testified that defendant did not have any authority or permission to possess the checks or deposit them in his accounts. Numerous other witnesses to whom the checks were mailed testified that they never received specific checks and had not given defendant permission to possess the checks or deposit them in his accounts.

Cheston Foster testified regarding his involvement in defendant's schemes. Foster pled guilty to a felony regarding his illegal activity. He testified that on October 16, 2008, defendant directed him to deposit an altered check. Although he was supposed to give defendant the money from the check, he lied and told defendant that he did not deposit the check, and then kept the money. Foster also testified that he had seen defendant in possession of United States Treasury checks stolen from the mail.

Kenneth Lee testified that he was an unwitting accomplice to defendant's fraud by opening a bank account at defendant's direction, purportedly for deposit of social security disability checks.

Tellers and bank investigators also testified that many of the stolen and forged checks had a "%" sign, which tellers who received the checks interpreted to mean "in care of." FBI Special Agent John Elvig testified under a limiting Rule 404(b) restriction that defendant was involved in similar activities in 1992 through 1994 and that he used similar techniques in those schemes.

On August 2, 2012, a jury found defendant guilty on all 28 counts. On December 7, 2012, the Court sentenced defendant to a total of 120 months in prison. Doc. #298. Defendant appealed the 11 convictions under Section 513(a). On September 22, 2014, the Tenth Circuit reversed defendant's convictions on eight of the Section 513(a) counts, finding insufficient evidence that the forged checks' payors, payees or drawee banks were organizations operating in interstate commerce. United States v. Powell, 767 F.3d 1026, 1033 (10th Cir. 2014). The Tenth Circuit remanded for resentencing. On May 15, 2015, the Court sentenced defendant to 120 months in prison. See Doc. #437.

## Analysis

### I.   Motion For Reassignment (Doc. #467)

On January 20, 2012, Chief Judge Wiley C. Daniel assigned this case to the undersigned judge. Defendant now asks for reassignment of the case, citing D. C. Colo. LCrR 50.1[1] Defendant states that he seeks reassignment "for good cause of judicial performance and fairness to defendant in the interest of justice in timely disposing issues before the Court without timely delays of out of District Scheduling

_____

[1]      D.C. Colo. LCrR 50.1 provides as follows:

(a) Assignment in General. Except as provided in this rule, criminal cases shall be assigned to judicial officers by random draw. Work parity shall be maintained among active district judges, provided that a majority of active district judges may adjust the assignment of criminal cases to the Chief Judge as may be necessary for the performance of the duties of that office, and may, for good cause, approve special assignment or reassignment of criminal cases among the judicial officers of the court. All other reassignments of cases shall be subject to the approval of the Chief Judge.

with the current Judicial Officer." Doc. #467 at 1. Rule 50.1 does not provide authority for defendant to request reassignment of this case. The question of recusal is for the judge currently assigned to the case.

The Court exercises discretion in deciding whether to recuse. See Weatherhead v. Globe Int'l, Inc., 832 F.2d 1226, 1227 (10th Cir. 1987). Sections 144 and 455 of Title 28, United States Code, govern motions for recusal. Section 144 provides as follows:

> [w]henever a party to any proceeding in district court makes and files a timely affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists . . . [and] shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. § 144. Defendant has not filed an affidavit in compliance with Section 144. Defendant asserts that he seeks recusal to avoid delays in scheduling which might arise because the undersigned does not ordinarily sit in the District of Colorado. The Court has made numerous trips to Colorado to handle matters in a timely manner, and finds no reason to recuse on this basis.

28 U.S.C. § 455(a) provides that federal judges must disqualify themselves in any proceeding in which their partiality might reasonably be questioned. Switzer v. Berry, 198 F.3d 1255, 1257 (10th Cir. 2000); see also Code of Conduct for United States Judges, Canon 3, § C(1) (judge shall disqualify herself in proceeding in which judge's impartiality might reasonably be questioned). The test is whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality. Hinman v. Rogers, 831 F.2d 937, 939 (10th Cir. 1987). The statutory guidance for recusal must also be read in light of a judge's "duty to sit" on cases filed with the Court. Nichols v. Alley, 71 F.3d 347, 351 (10th Cir. 1995). The statute is not intended to give litigants a veto power over sitting

-4-

judges, or as a vehicle for obtaining a judge of their choice.  United States v. Cooley, 1 F.3d 985, 993

(10th Cir. 1993). Consequently, a judge should not recuse on unsupported, irrational or highly tenuous

speculation.  Hinman, 831 F.2d at 939 (citation omitted).  Adverse rulings almost never provide a basis

for recusal, nor do opinions formed or expressed by a judge based upon the record "unless they display

a deep-seated favoritism or antagonism that would make fair judgment impossible."  Liteky v. United

States, 510 U.S. 540, 554-55 (1994).  Here, defendant has not pointed to any facts, and the Court is

aware of none, which would cause a reasonable person to question the impartiality of the undersigned

judge.[2]  The Court therefore finds that defendant's motion for reassignment should be overruled.

## II.     Motion For Appointment Of Counsel And/Or Advisory Counsel (Doc. #465)

Defendant asks the Court to appoint counsel to represent him in his Rule 33(b)(1) motion or to

appoint advisory counsel.  A post-conviction, pre-appeal Rule 33 motion is considered part of a

defendant's direct appeal, and the Sixth Amendment right to counsel attaches.  See, e.g., Kitchen v.

United States, 227 F.3d 1014, 1019 (7th Cir. 2000) ("wide of the mark" to label pre-appeal motion for

new trial as collateral attack).  A post-conviction, post-appeal Rule 33 motion, however, is considered

a collateral challenge to which the Sixth Amendment right to counsel does not attach.  See United

States v. Berger, 375 F.3d 1223, 1226-27 (11th Cir. 2004); Mayo v. Cockrell, 287 F.3d 336, 339 (5th

Cir. 2002) (no constitutional right to counsel for post-appeal motions for new trial); Trenkler v. United

States, 268 F.3d 16, 20 (1st Cir. 2001) (post-conviction, post-appeal Rule 33 motions are collateral

proceedings for which criminal defendant has no Sixth Amendment right to attorney); Johnson v.

---

[2]        Under Section 455(b)(l), a judge must also disqualify herself if she has a personal bias
or prejudice concerning a party.  The undersigned has no such bias or prejudice against defendant, from
extrajudicial sources or otherwise.  See Liteky v. United States, 510 U.S. 540, 554-55 (1994) (bias and
prejudice must come from extrajudicial source).

United States, 246 F.3d 655, 658 (6th Cir. 2001) (delayed Rule 33 motion is collateral challenge separate from direct appeal).

Here, after the Court re-sentenced defendant, he filed a direct appeal and then withdrew the appeal. Absent a Sixth Amendment right to counsel, the decision whether to appoint counsel for defendant in this post-conviction, post-appeal Rule 33 motion is left to the discretion of the district court. See Berger, 375 F.3d at 1226-27; Trenkler, 268 F.3d at 20 (after final conviction appointment of counsel rests in discretion of court); United States v. Birrell, 482 F.2d 890, 892 (2d Cir. 1973) (per curiam) (same). The Court finds that defendant's motion for appointment of counsel should be overruled. His motion for a new trial does not raise complex legal issues. Further, as set forth below, he has not identified any newly discovered evidence which is likely lead to a different result in a new trial. The Court therefore declines to appoint counsel.

## III.    Amended Rule 33(b)(1) Motion For New Trial (Doc. #483)

A motion for a new trial grounded on newly discovered evidence must be filed within three years after the verdict or finding of guilty. Fed. R. Crim. P. 33(b)(1). A motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty. Fed. R. Crim. P. 33(b)(2). Defendant filed his motion well beyond the 14-day limit, and thus his claims are time-barred unless they meet the requirements for newly discovered evidence under Rule 33.[3]

---

[3]    Rule 33(b)(1) provides that a motion grounded on newly discovered evidence must be filed within three years of the verdict or finding of guilt. Defendant filed his original Rule 33 motion on August 10, 2015 – eight days after the three-year deadline. But the Rule 33 time limitations are not jurisdictional and are subject to forfeiture if the government fails to object to an untimely submission. See United States v. Jones, 369 F. App'x 937, 939 (10th Cir. 2010) (citing Eberhart v. United States, 546 U.S. 12, 18-19 (2005)). Here the government has not raised the untimeliness of defendant's motion
(continued...)

To satisfy the requirement of newly discovered evidence under Rule 33, defendant must show that (1) the evidence was discovered after trial; (2) defendant's lack of diligence did not cause the failure to discover the evidence; (3) the new evidence is not merely impeaching; (4) the new evidence is material to the principal issues involved; and (5) the new evidence would probably produce an acquittal in a new trial.  United States v. Pearson, 203 F.3d 1243, 1274 (10th Cir. 2000).

Defendant asserts ten grounds for relief under Rule 33: (1) the indictment was invalid because it failed to charge an offense or give fair notice of the charges; (2) the jury instructions were an "Unconstitutional Amendment" of the indictment; (3) the convictions were not supported by sufficient evidence; (4) the prosecution did not disclose all evidence that was favorable to defendant; (5) the government presented coerced confessions; (6) the government presented evidence gained pursuant to an unconstitutional search and seizure; (7) the government presented evidence obtained pursuant to an unlawful arrest by Postal Inspectors on October 10, 2006; (8) the conviction violated defendant's protection against double jeopardy; (9) the government engaged in bad faith prosecution by intimidating and threatening defendant's potential witnesses that they would get indicted if they testified for defendant or assisted in his defense; and (10) defendant received ineffective assistance of counsel at trial, on direct appeal and at the re-sentencing hearing.

On their face, most of defendant's claims for relief are time-barred under Rule 33(b)(2) because they are not based on newly discovered evidence.  Within his motion, however, defendant asserts several facts which he asserts constitute newly discovered evidence, as set out below.

---

[3](...continued)
for new trial under Rule 33(b)(1).

<u>Affidavit Of Rollins Meadows</u>

Defendant cites the unsigned affidavit of Rollins Meadows, which states that in 2008, Meadows saw Foster alter payee names on stolen checks.  <u>See</u> Exhibit A to Doc. #483.  Further, in 2010, Meadows was in the same cell as Foster on unrelated cases.  Foster told Meadows that U.S. Postal Inspectors had told him that they needed Foster's help to convict Powell.  Meadows was also with Foster and Erica Renta when they went to the UMB bank to open an account with a stolen check for $19,216 (which defendant was charged with forging).  Meadows never saw defendant involved with Foster in cashing any checks.  While Foster was in a halfway house in Denver, he needed proof of employment and asked defendant to write a fake letter stating that he had a job with defendant's company, "DBC."  <u>See</u> Doc. #483 at 3, 12, 15-16.

<u>Evidence Regarding Ewin Bell</u>

On December 10, 2012 (several months after the trial ended), Ewin Bell, who had been living at defendant's apartment, told defendant that for the past few weeks he had been repeatedly threatened and intimidated by Postal Inspectors Brian Mullervy, Richard Sheehan, Kevin Korsick and AUSA Joseph Mackey.  Bell said that the Inspectors and Mackey told him that they had tapped the house phones and knew that he had daily contact with defendant in jail.  They told Bell that if he continued to do so, they would arrest him and send him to prison with defendant.  Bell told defendant that he had not gone to defendant's trial because the Inspectors and Mackey had shown him mug shots of defendant and told him that defendant was a career criminal.

<u>Evidence Regarding Michael Lynch</u>

On or around December 10, 2012, Michael Lynch, defendant's former employee and friend, told defendant that the Inspectors and Mackey had warned him to stay away from defendant and said that

if he continued his relationship with defendant he would be indicted for mail fraud.  Mackey also asked

Lynch if he knew addresses of any of defendant's family members.

### Loss Of Personal And Legal Property

While defendant was in the Denver County Jail in December of 2012 and the Teller County Jail

in late December of 2012 and January of 2013, jail personnel searched his legal materials without his

consent and perhaps destroyed some of his legal and personal property.

### Evidence Of October 10, 2006 Incident

In October of 2014, unnamed King Soopers store security employees informed defendant that

they had located store security tapes from October 10, 2006 regarding the incident at TFC Bank.

Defendant does not indicate the content of the tapes.

### **Discussion**

After carefully reviewing defendant's motion, the trial transcript and exhibits, the Court finds

that defendant has not pointed to newly discovered evidence that would probably produce an acquittal

if introduced at a new trial.  Much of the evidence relates to events which occurred after defendant's

conviction and would not be admissible in a new trial.  Arguably some of the information in the

Meadows affidavit might be admissible to impeach Foster, who provided incriminating testimony

against defendant.  The Court notes that Meadows did not sign the affidavit, and it is therefore not

admissible.  Further, newly discovered evidence which is merely impeaching generally does not justify

a new trial.  United States v. McMahan, 852 F.2d 337, 339 (8th Cir. 1988).  Of course, the Court may

grant a new trial if "it appears that had the impeaching evidence been introduced, it is likely that the

jury would have reached a different result."  United States v. Davila, 428 F.2d 465, 466 (9th Cir. 1970).

Here, however, in light of overwhelming evidence against defendant, the Court finds that a new trial

would not likely result in defendant's acquittal.  Accordingly, the Court finds that defendant has failed to demonstrate that he is entitled to a new trial.

### IV.    Motions For Return Of Defendant's Attorney/Client Files And Records (Docs. # 466, 477)

Defendant asks the Court to direct the attorneys who have represented him in this case to return all of his files and records.

Rule 1.16(d) of the Colorado Rules of Professional Conduct requires counsel, upon termination of representation, to surrender papers to which the client is entitled.  Colo. RPC 1.16(d); see Colo. Bar. Assoc. Formal Ethics Op. 104, "Surrender of Papers to the Client Upon Termination of the Representation," dated April 17, 1999 ("Under Colo. RPC 1.16(d), all papers and property to which the client is entitled must be surrendered upon demand within a reasonable time, regardless of duplication costs.  In the event the lawyer decides to retain a copy of those papers and property for the lawyer's own purposes, the duplication costs for these items are not properly billed to the client.").  The Court therefore finds that defendant's motion should be sustained to the degree that any of his attorneys currently have in their custody papers to which plaintiff is entitled and which such attorney has not already submitted to defendant or to replacement counsel.

**IT IS THEREFORE ORDERED** that Defendant's Motion For An Order [Of] Reassignment Of This Case To A Judge In The District Of Colorado (Doc. #467) filed August 10, 2015 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that defendant's Motion For Appointment Of Counsel And/Or Advisory Counsel (Doc. #465) filed August 10, 2015 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that defendant's Amended Rule 33(b)(1) Motion Pursuant To

Federal Rules Of Criminal Procedure (Doc. #483) filed October 14, 2015 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that defendant's Letter Regarding Holding Motions In Abeyance (Doc. #463) filed August 10, 2015 be and hereby is **OVERRULED as moot**.

**IT IS FURTHER ORDERED** that defendant's Motion For A New Trial Pursuant To Rule 32(b)(1), Fed. R. Crim. P. (Doc. #464) filed August 10, 2015 be and hereby is **OVERRULED as moot**.

**IT IS FURTHER ORDERED** that defendant's Motion For Order Requiring The U.S. Marshal's Service To Permit Him To Travel With His Legal Papers (Doc. #397) filed February 26, 2015, be and hereby is **OVERRULED as moot**.

**IT IS FURTHER ORDERED** that Defense Counsel Ty Gee's Motion To Withdraw As Counsel (Doc. #442) filed June 15, 2015 be and hereby is **SUSTAINED.**

**IT IS FURTHER ORDERED** that defendant's Motion To Stay [Transfer] In This Case Pending Final Disposition Of the Rule 33(a)(a) Motion (Doc. #468) filed August 10, 2015 be and hereby is **OVERRULED as moot**.

**IT IS FURTHER ORDERED** that defendant's Motion To Appoint And Authorize Services Of The U.S. Marshal For Serving The Defendant's Subpoenas At Government Expense (Doc. #469) filed August 10, 2015 be and hereby is **OVERRULED as moot**.

**IT IS FURTHER ORDERED** that the Motion To Appoint Private Investigator For Defendant's Rule 33(a)(1) Motion (Doc. #470) filed August 10, 2015 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that defendant's Motion To Clerk Of The District Court Authorized Issuance Of Subpoenas Pursuant To Defendant's Proposed Witness List (Doc. #471) filed August 10, 2015 be and hereby is **OVERRULED as moot**.

**IT IS FURTHER ORDERED** that Defendant's Motion For Expert Witness To Testify (Doc. #472) filed August 10, 2015 be and hereby is **OVERRULED as moot**.

**IT IS FURTHER ORDERED** that defendant's Motion Requesting A Court Order For [An] Expedited Court Setting Date On The Defendant's Rule 33(a) Motions (Doc. #473) filed August 10, 2015 be and hereby is **OVERRULED as moot**.

**IT IS FURTHER ORDERED** that defendant's Motion For Return Of Defendant's Attorney/Client Files And Records (Doc. #466) and defendant's Pro Se Motion Requesting Order That Attorney Ty Cheung Ge Return All Of Defendant's Attorney Clients Files And Records To The Defendant Crosby Powell (Doc. #477), both filed August 25, 2015, be and hereby are **SUSTAINED in part.  The Court orders that on or before December 15, 2015, Jonathan Willett, Barrett Thomas Weisz, Ty Cheung Gee, and Paula M. Ray shall each mail to defendant all papers to which he is entitled which are currently in their possession *and which such attorney has not already submitted to defendant or to replacement counsel*.  Each attorney shall mail the materials, if any, to defendant at**

> **Crosby Lincoln Powell**
> **#02458-135**
> **FEDERAL CORRECTIONAL INSTITUTION**
> **PO Box 3007 - Unit D**
> **San Pedro, CA   90733**

**The Clerk is directed to ensure that Jonathan S. Willett, Barrett Thomas Weisz, Ty Cheung Gee, and Paula M. Ray each receive notice of this order.  On or before December 15, 2015, Jonathan Willett, Barrett Thomas Weisz, Ty Cheung Gee, and Paula M. Ray shall each file a certificate of compliance with this order.**

Dated this 18th day of November, 2015 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge