**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CRIMINAL ACTION |
| | ) | No. 11-00036-01-KHV |
| v. | ) | |
| | ) | CIVIL ACTION |
| CROSBY L. POWELL, | ) | No. 17-00710-KHV |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

On November 7, 2012, the Court sentenced defendant to 120 months in prison. This matter is before the Court on defendant's Motion To Vacate, Set Aside, Or Correct Sentence Brought Under Title 28 U.S.C. § 2255 – 2nd Amended Motion (Doc. #548) filed August 4, 2017. The government has filed a response and defendant has filed a reply. See United States' Answer To Defendant's Motion Under 28 U.S.C. § 2255 (Doc. #551) filed February 16, 2018; Defendant Answer [And] Response To The Government Response (Doc. #552) filed March 16, 2018. For reasons stated below, the Court overrules defendant's Section 2255 motion and denies a certificate of appealability.

**Factual Background**

On June 21, 2011, a grand jury charged defendant with 17 counts of possession of stolen mail in violation of 18 U.S.C. § 1708 and 11 counts of fraud related to securities of private entities in violation of 18 U.S.C. § 513(a). See Superseding Indictment (Doc. #26). Beginning July 16, 2012, the Court conducted a nine-day jury trial. Highly summarized, the evidence at trial included the following:

In October of 2006, a TCF Bank investigator contacted Postal Inspectors Brian Mullervy and Richard Sheehan about possible bank fraud involving stolen checks. The investigator told

the Postal Inspectors that approximately $70,000 in stolen checks had been deposited into defendant's "Dis Wire" account at TCF Bank in Denver, Colorado. The Postal Inspectors went to TCF Bank and contacted a teller who identified defendant as the person who had deposited the checks. The Postal Inspectors also retrieved the stolen checks and the related deposit slip. The Inspectors then contacted defendant and he agreed to meet with them. Defendant acted surprised when the Inspectors told him that the checks were stolen. Defendant stated that he had two businesses involving business cards, used cell phones and used computers. He said that the checks which he had deposited came from customers who had purchased merchandise from him.

Numerous witnesses testified about stolen checks that had been deposited into defendant's TCF bank account and other bank accounts at UMB Bank and Wells Fargo. These witnesses testified that they had placed specific checks in authorized mail receptacles, and that the checks were intended to be received and deposited by the designated recipients. The witnesses further testified that defendant did not have authority or permission to possess the checks or deposit them into his accounts. Numerous other witnesses to whom the checks were mailed testified that they never received specific checks and had not given defendant permission to possess the checks or deposit them into his accounts.

Cheston Foster testified regarding his involvement in defendant's schemes. Foster pled guilty to a felony regarding his illegal activity, and testified that on October 16, 2008, defendant directed him to deposit an altered check. Although Foster was supposed to give defendant the money from the check, Foster lied; he told defendant that he did not deposit the check, and then he kept the money. Foster also testified that he had seen defendant in possession of United States Treasury checks stolen from the mail.

Kenneth Lee testified that by opening a bank account at defendant's direction, purportedly

for deposit of social security disability checks, he was an unwitting accomplice to defendant's fraud.

Tellers and bank investigators testified that many of the stolen and forged checks had a "%" sign, which tellers who received the checks interpreted to mean "in care of." FBI Special Agent John Elvig testified that defendant was involved in similar activities in 1992 through 1994 and that he used similar techniques in those schemes.

On August 2, 2012, a jury found defendant guilty on all 28 counts. On December 7, 2012, the Court sentenced defendant to a total of 120 months in prison. Judgment In A Criminal Case (Doc. #298). Defendant appealed the 11 fraud convictions under Section 513(a). On September 22, 2014, the Tenth Circuit reversed defendant's convictions on eight of the Section 513(a) counts, finding insufficient evidence that the payors, payees and drawee banks of the forged checks were organizations operating in interstate commerce. See United States v. Powell, 767 F.3d 1026, 1033 (10th Cir. 2014). The Tenth Circuit remanded for resentencing. On May 15, 2015, the Court again sentenced defendant to 120 months in prison. See Amended Judgment In A Criminal Case (Doc. #437). The Court also ordered restitution in the stipulated amount of $57,616.49. See id. at 6.

On June 11, 2015, defendant filed a notice of appeal. On August 7, 2015, through court-appointed counsel, defendant filed a second amended motion to dismiss the appeal. The Tenth Circuit granted that motion and dismissed the appeal under 10th Cir. R. 46.3(B). Order (Doc. #460).

On November 18, 2015, the Court overruled defendant's Motion For A New Trial Pursuant To Fed. R. Crim. P. 33(b)(1) (Doc. #483) as well as numerous related motions. See Memorandum And Order (Doc. #488). Defendant appealed. On October 4, 2016, the Tenth Circuit affirmed.

See Order And Judgment (Doc. #537).

Barrett Weisz represented defendant at trial. Ty Gee represented defendant on direct appeal, at resentencing and on appeal of defendant's amended judgment.

On August 4, 2017, defendant filed a pro se motion to vacate his sentence under 28 U.S.C. § 2255. The government concedes that defendant's present motion is timely.[1] Defendant's motion asserts that (1) Cheston Foster committed perjury at trial; (2) Barrett Weisz provided ineffective assistance of counsel at trial; (3) Ty Gee provided ineffective assistance of counsel on appeal and at resentencing; and (4) the amount of $57,616.49 in the stipulated restitution order is incorrect. Motion To Vacate (Doc. #548) at 4-6.

## Analysis

**I.     Perjury Of Trial Witness**

Defendant argues that Foster committed perjury at trial. Id. at 4-5. In support, defendant has submitted the unsigned affidavit of Rollin Meadows.[2] In his motion for new trial, defendant raised this same argument and relied on the same unsigned affidavit. In ruling on defendant's

---

[1] On March 15, 2016, the Court overruled defendant's first Section 2255 motion because he had filed it while the denial of his new trial motion was on appeal. See Order (Doc. #525). On April 11, 2017, the Court overruled defendant's next Section 2255 motion as defective, but granted defendant leave to refile. See Order (Doc. #542). On July 13, 2017, the Court overruled a third Section 2255 motion as defective, but again granted defendant leave to refile. See Order (Doc. #546).

[2] The unsigned affidavit states that in 2008, Meadows saw Foster alter payee names on stolen checks. See Affidavit [Of Rollin Meadows] at 1, attached to Motion To Vacate (Doc. #548). Further, in 2010, Meadows was in the same cell as Foster on unrelated cases. Foster told Meadows that U.S. Postal Inspectors had told him that they needed Foster's help to convict Powell. Meadows was also with Foster and Erica Renta when they went to the UMB bank to open an account with a stolen check for $19,216 (which defendant was charged with forging). Meadows never saw defendant involved with Foster in cashing any checks. Foster told Meadows that while Foster was in a halfway house in Denver, he needed proof of employment and asked Powell to write a letter falsely stating that Foster had a job with his company, "DBC." See id. at 2.

-4-

motion for new trial, the Court stated as follows:

> After carefully reviewing defendant's motion, the trial transcript and exhibits, the Court finds that defendant has not pointed to newly discovered evidence that would probably produce an acquittal if introduced at a new trial. Much of the evidence relates to events which occurred after defendant's conviction and would not be admissible in a new trial. Arguably some of the information in the Meadows affidavit might be admissible to impeach Foster, who provided incriminating testimony against defendant. The Court notes that Meadows did not sign the affidavit, and it is therefore not admissible. Further, newly discovered evidence which is merely impeaching generally does not justify a new trial. United States v. McMahan, 852 F.2d 337, 339 (8th Cir. 1988). Of course, the Court may grant a new trial if "it appears that had the impeaching evidence been introduced, it is likely that the jury would have reached a different result." United States v. Davila, 428 F.2d 465, 466 (9th Cir. 1970). Here, however, in light of overwhelming evidence against defendant, the Court finds that a new trial would not likely result in defendant's acquittal. Accordingly, the Court finds that defendant has failed to demonstrate that he is entitled to a new trial.

Memorandum And Order (Doc. #488) filed November 18, 2015 at 9-10.

On appeal, the Tenth Circuit affirmed, stating as follows:

> Even if we overlook the evidentiary deficiency in Meadows' affidavit, *see* 28 U.S.C. § 1746 (indicating that an unsworn affidavit must be "subscribed . . . as true under penalty of perjury"), nothing in that document suggests Powell probably would have been acquitted based on Meadows' statements. Significantly, Meadows does not assert that Foster committed any of the § 513(a) crimes that this court upheld on appeal. And as the district court observed, "[n]umerous witnesses testified regarding stolen checks that had been deposited into [Powell's]" bank accounts, and they indicated that "[Powell] did not have any authority or permission to possess the checks or deposit them in his accounts." R., Vol. I at 527. At most, the affidavit shows Foster was also engaged in illegal check activity. But a new trial cannot be granted where the new evidence would merely impeach a witness. *See [United States v.] Jordan*, 806 F.3d [1244,] 1252 [(10th Cir. 2015)]. The district court did not abuse its discretion in denying Powell's motion for a new trial.

Order And Judgment (Doc. #537) at 5-6 (footnotes omitted).

The law of the case doctrine posits that when a court decides a rule of law, that decision "should continue to govern the same issues in subsequent stages in the same case." Arizona v. California, 460 U.S. 605, 618 (1983); see United States v. West, 646 F.3d 745, 748 (10th Cir. 2011) (law of case doctrine precludes relitigation of legal ruling already decided). The doctrine

seeks to preserve the finality of judgments, to prevent continued re-argument of issues already decided, and to preserve scarce judicial resources. Procter & Gamble Co. v. Haugen, 317 F.3d 1121, 1132-33 (10th Cir. 2003).

Here, this Court overruled defendant's motion for new trial on the claim that Foster committed perjury, and the Tenth Circuit affirmed. The Tenth Circuit recognizes only three "exceptionally narrow" grounds for departure from the law of the case doctrine: (1) when the evidence in a subsequent trial is substantially different; (2) when controlling authority has subsequently made a contrary decision of the law applicable to such issues; or (3) when the decision was clearly erroneous and would work a manifest injustice. United States v. Alvarez, 142 F.3d 1243, 1247 (10th Cir. 1998). Defendant has not cited any potential exception to the law of the case doctrine. Accordingly, under the law of the case doctrine, the Court overrules defendant's first claim.

Defendant's first claim also lacks substantive merit. For substantially the reasons stated in the United States' Answer To Defendant's Motion Under 28 U.S.C. § 2255 (Doc. #551) and the prior orders in this case, defendant has not presented admissible evidence of perjury. In addition, the unsigned Meadows affidavit is insufficient to establish a reasonable probability that Foster's alleged misstatements altered the outcome of trial. The Meadows affidavit cites only one specific stolen or forged check, which related to defendant's conviction on Count 8. See Order And Judgment (Doc. #537) at 6 n.3. Because the Tenth Circuit vacated defendant's conviction on Count 8 on direct appeal, Foster's purported misstatements had no material impact on the ultimate outcome of trial. See id.

**II.     Ineffective Assistance Of Counsel**

To establish ineffective assistance of counsel, defendant must show (1) that the

performance of counsel was deficient and (2) a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687, 694 (1984). To establish deficient performance, defendant must prove that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. In other words, defendant must prove that counsel performed "below an objective standard of reasonableness." United States v. Walling, 982 F.2d 447, 449 (10th Cir. 1992). The Supreme Court recognizes, however, "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689; see United States v. Rantz, 862 F.2d 808, 810 (10th Cir. 1988).

    A.   Trial Counsel – Barrett Weisz

Defendant alleges that Weisz provided ineffective assistance at trial. Defendant first argues that counsel did not obtain a videotape of defendant's arrest. Motion To Vacate (Doc. #548) at 5. Defendant does not explain how the videotape was relevant to the jury's determination of his guilt. Accordingly, he has not shown that counsel's failure to obtain the videotape was deficient or prejudicial.

Next, defendant argues that Weisz provided ineffective assistance because he did not interview or call "all of defendant's witnesses" at trial. Id. Defendant has identified the following potential witnesses: Karen Foster, Chester Taylor, III, Tiffany Jones, Dion Dyson, Cleveland Holmes, David Schmauder, Suss Pontiac, Erica Renta, Clifford Hunter, Rich Orman, Lisa Tennyson, Veronica Ramirez, Papa Dia, Thomas Miller, III, Katrina Braxton, Joshua Sole, Martha Guerrero, Rafreal Mendosa, Quintin Zuber, custodian of records for Nile Auto Sales, a witness to testify that "Martha cash[ed] checks for illegal Mexican client," and a witness to explain

"involvement in DBC." Defendant's Witness Summary Sheet at 1-4, attached to Motion To Vacate (Doc. #548). Renta, Tennyson and Guerrero (now Mendoza) testified for the government. Jones testified for defendant. As to the other witnesses, defendant acknowledges that counsel investigated "several of Movant witnesses," but concluded that the witnesses would not be favorable to the defense. Motion To Vacate (Doc. #548) at 5 (counsel claimed witnesses were hostile and his policy was not to use hostile witnesses). Defendant has not offered witness affidavits to explain how their testimony was relevant and would have altered the outcome of trial.

To warrant an evidentiary hearing on a claim that counsel failed to interview or subpoena a witness, defendant must provide an affidavit of the potential witness as to the nature of the proposed testimony. See United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991) (to show ineffective assistance, evidence about testimony of putative witness must generally be presented by witness testimony or affidavit); see also Snow v. Sirmons, 474 F.3d 693, 730 n.42 (10th Cir. 2007) (to show prejudice, petitioner must show not only that testimony of uncalled witness would have been favorable, but that witness would have testified); United States v. Cervini, 379 F.3d 987, 994 (10th Cir. 2004) (no evidentiary hearing required without firm idea of what testimony will encompass and how it will support claim); United States v. Jones, 124 F.3d 218 (Table), 1997 WL 580493, at *1 (10th Cir. Sept. 19, 1997) (certificate of appealability on ineffective assistance claim denied because defendant did not present specific facts to show co-defendant would have offered exculpatory evidence). Absent an affidavit from the proposed witnesses, defendant has failed to show a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694.

Finally, defendant argues that Weisz provided ineffective assistance because he did not argue that Foster, Renta and Jones committed perjury. For substantially the reasons explained

above as to Foster, considering the overwhelming evidence against defendant, defendant has not shown that a claim of perjury as to the witnesses would have altered the outcome of trial.

The Court overrules defendant's claim that Weisz provided ineffective assistance at trial.

B.  Appellate Counsel – Ty Gee

Defendant alleges that Gee provided ineffective assistance on appeal and at resentencing. Defendant first argues that Gee failed to provide defendant a copy of the opening appellate brief. Motion To Vacate (Doc. #548) at 6. Defendant has not shown a reasonable probability that counsel's failure to provide him a copy of the brief altered the outcome of the appeal. Accordingly, the Court overrules defendant's first claim.

Next, defendant argues that on appeal, Gee refused to address defendant's 17 counts of conviction for possessing stolen mail under 18 U.S.C. § 1708. Id. Defendant apparently argues that Gee should have challenged the sufficiency of the evidence on these counts, but he has not alleged sufficient facts to establish that counsel's failure to raise this issue was deficient or prejudicial. See Strickland, 466 U.S. at 687, 694. In particular, defendant has not shown that counsel failed to raise an argument that was a "dead-bang winner." United States v. Challoner, 583 F.3d 745, 749 (10th Cir. 2009) (citation and quotation omitted) (deficient performance for appellate counsel to omit argument that is dead-bang winner). As explained above, numerous witnesses testified that they had placed specific checks in authorized mail receptacles, and that the checks were intended to be received and deposited by the designated recipients. On direct appeal, the Tenth Circuit cited approvingly this Court's summary that "[n]umerous witnesses testified regarding stolen checks that had been deposited into [Powell's] bank accounts, and they indicated that [Powell] did not have any authority or permission to possess the checks or deposit them in his accounts." Order And Judgment (Doc. #537) at 6 (internal quotation marks omitted). Based on

the overwhelming evidence of defendant's guilt, defendant has not shown that a challenge to the sufficiency of the evidence on the stolen mail counts likely would have altered the result of the appeal. The Court therefore overrules defendant's claim that Gee provided ineffective assistance because he did not challenge defendant's stolen mail convictions on appeal.

Finally, defendant raises a conclusory claim that Gee did not adequately prepare for resentencing. Motion To Vacate (Doc. #548) at 6. Counsel's performance at resentencing was within the wide range of reasonable professional assistance. In addition, defendant has not shown a reasonable probability that if counsel had presented his arguments differently, the result of the sentencing likely would have been different.

The Court overrules defendant's claim that Gee provided ineffective assistance on appeal and at resentencing.

## III.    Restitution

Defendant claims that the amount of $57,616.49 in the stipulated restitution order is incorrect because (1) it includes checks that Foster cashed and (2) it includes purported losses of TCF Bank. Motion To Vacate (Doc. #548) at 6. The government has not raised the issue, but the Court first addresses whether defendant can challenge the amount of restitution in a Section 2255 motion. Because a challenge to the amount of restitution does not claim "the right to be released" from custody, 28 U.S.C. § 2255, the Court lacks jurisdiction to consider defendant's restitution claim as part of a Section 2255 motion. See United States v. Satterfield, 218 F. App'x 794, 796 (10th Cir. 2007); United States v. Papa, 97 F. App'x 848, 851 (10th Cir. 2004); United States v. Bernard, 351 F.3d 360, 361 (8th Cir. 2003); see also United States v. Wayne, 394 F. App'x 497, 498 (10th Cir. 2010) (challenge to restitution order required to be brought on direct appeal); Kaminski v. United States, 339 F.3d 84, 88-89 (2d Cir. 2003)

(noncustodial punishment cannot be attacked in Section 2255 motion even if motion also alleges error in sentence of imprisonment).  But cf. United States v. Melot, 680 F. App'x 788, 790 (10th Cir.) (district court did not err in treating motion asserting that restitution incorrectly calculated as § 2255 motion), cert. denied, 138 S. Ct. 180 (2017), recons. denied, 138 S. Ct. 491 (2017).  The Court therefore dismisses defendant's claim that the amount of restitution is incorrect.[3]

## Conclusion

The files and records in this case conclusively show that defendant is not entitled to relief. Moreover, defendant does not allege specific and particularized facts which, if true, would entitle him to relief.  Accordingly, no evidentiary hearing is required. See 28 U.S.C. § 2255; Cervini, 379 F.3d at 994 (standard for evidentiary hearing higher than notice pleading); United States v. Kilpatrick, 124 F.3d 218 (Table), 1997 WL 537866, at *3 (10th Cir. Sept. 2, 1997) (conclusory allegations do not warrant hearing); United States v. Marr, 856 F.2d 1471, 1472 (10th Cir. 1988) (no hearing required where court may resolve factual matters raised by Section 2255 petition on record); United States v. Barboa, 777 F.2d 1420, 1422-23 (10th Cir. 1985) (hearing not required unless "petitioner's allegations, if proved, would entitle him to relief" and allegations are not contravened by record).

---

[3]     In any event, defendant's claim is without merit because he stipulated to the restitution amount and did not pursue his appeal on the issue.  See United States' Answer To Defendant's Motion Under 28 U.S.C. § 2255 (Doc. #551) at 11.

Under 18 U.S.C. § 3664(k), in limited circumstances such as a material change in defendant's economic circumstances, the Court may adjust the restitution payment schedule, or require immediate payment in full, as the interests of justice require.  Here, defendant challenges the calculation of the total restitution amount, not the payment schedule.  For this reason and because defendant has not satisfied the statutory prerequisites for relief, the Court declines to consider his restitution challenge under Section 3664.

## Certificate Of Appealability

Under Rule 11 of the Rules Governing Section 2255 Proceedings, the Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).[4] To satisfy this standard, the movant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Saiz v. Ortiz, 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting Tennard v. Dretke, 542 U.S. 274, 282 (2004)). For reasons stated above, the Court finds that defendant has not satisfied this standard. The Court therefore denies a certificate of appealability as to its ruling on defendant's Section 2255 motion.

**IT IS THEREFORE ORDERED** that defendant's Motion To Vacate, Set Aside, Or Correct Sentence Brought Under Title 28 U.S.C. § 2255 – 2nd Amended Motion (Doc. #548) filed August 4, 2017 is **DISMISSED for lack of jurisdiction as to defendant's claim related to the amount of restitution and OVERRULED as to all other claims**.

**IT IS FURTHER ORDERED** that a certificate of appealability as to the ruling on defendant's Section 2255 motion is **DENIED.**

Dated this 6th day of December, 2018 at Kansas City, Kansas.

s/ Kathryn H. Vratil  
KATHRYN H. VRATIL  
United States District Judge

---

[4] The denial of a Section 2255 motion is not appealable unless a circuit justice or a circuit or district judge issues a certificate of appealability. See Fed. R. App. P. 22(b)(1); 28 U.S.C. § 2253(c)(1).